UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TINKA VASSILEVA, | |
| Plaintiff, | |
| | No. 24 CV 249 |
| v. | |
| | Judge Georgia N. Alexakis |
| CITY OF CHICAGO, | |
| Defendant. | |

MEMORANDUM OPINION AND ORDER

Plaintiff Tinka Vassileva applied for a promotion with the City of Chicago ("the City") and, after another employee got the position, sued under the Age Discrimination in Employment Act ("ADEA"), Title VII of the Civil Rights Act of 1964, and 42 U.S.C §§ 1981 and 1983. Vassileva alleged that she had been discriminated against on the basis of her age (57 at the time), sex (female), and national origin (Bulgarian), as well as retaliated against for her previous complaints of discrimination. *See generally* [1]. The City now moves for summary judgment on Vassileva's sole remaining claim of failure-to-promote. [78]. For the reasons given below, that motion is granted.

I.    **Legal Standards**

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014); Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## II.    Background

As the City notes in its reply, Vassileva has not responded to either its motion or its statement of material facts under Local Rule 56.1. [87] at 6. The Court therefore accepts the City's properly alleged and supported facts as undisputed for the purpose of the motion. N.D. Ill. Local Rule 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *see also Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012) (where plaintiff failed to file a response to defendant's Local Rule 56.1 statement of facts in the district court, appeals court "credit[ed] [defendant's] uncontroverted version of the facts to the extent that it is supported by evidence in the record"). The City's adequately supported facts, which provide the relevant background, follow:

Vassileva, a woman who is originally from Bulgaria, is a Filtration Engineer for the City's Department of Water Management ("the Department"). [80] ¶¶ 1, 4. The Department purifies and transports potable drinking water to residents of Chicago and surrounding suburbs. *Id.* ¶ 2. Since August 2001, Vassileva has worked at the Jardine Water Purification Plant ("Jardine"), which treats and purifies water from Lake Michigan. *Id.* ¶¶ 4, 6.

Filtration engineers like Vassileva "are responsible for the daily operation of" Jardine. *Id.* ¶ 7. Vassileva was hired as a Filtration Engineer II, the "entry level"

position, in August 2001, and was promoted to Filtration Engineer III in July 2019. *Id.* ¶ 4, 7. Filtration Engineer III is a position that "involves fully functional professional engineering work coordinating and participating in the operation and maintenance of purification and chemical feeding equipment." *Id.* ¶ 10. An individual in that position also "investigates equipment breakdowns and makes recommendations to prevent their recurrence under supervision." *Id.* Neither the Filtration Engineer II or III roles involve supervising other engineers. *Id.* ¶ 7.

The City posted a job announcement for a Chief Filtration Engineer at Jardine on August 20, 2021. *Id.* ¶ 13. The Chief Filtration Engineer at Jardine oversaw 26 employees total, including six employees at Filtration Engineer IV and six at Filtration Engineer V. *Id.* ¶ 8. Both the IV and V roles involved supervision of other employees. *Id.* ¶ 9. Other Chief Filtration Engineer duties included working with "management and contractors in reviewing the status of large-scale capital improvement projects" and overseeing "work in progress and on-going projects of private contractors." *Id.* ¶ 8. One of the posted requirements for Chief Filtration Engineer was "three years [] in a supervisory role related to water treatment process or engineering projects," although the posting recognized that "an equivalent combination of education, training and experience" could meet that requirement, "provided that the minimum degree requirement [was] met." *Id.* ¶ 14.

Vassileva was one of 12 applicants for the posted position but was not one of the five applicants selected for an interview by the City's recruiter, Martin Wise. *Id.* ¶¶ 13, 15–16. Three of the interviewees already held positions of either Filtration

Engineer IV or V. *Id.* ¶ 18. Of the remaining two interviewees, one was a Filtration Engineer II and one was not a City employee, but both "had the requisite supervisor experience based on prior work experience outside of the City." *Id.* ¶ 19. All the applicants who received interviews were men. *Id.* ¶ 16. Wise determined that the applicants who were not interviewed, including Vassileva, had not "provide[d] evidence that they met the required minimum qualifications for the position." *Id.* ¶¶ 20–21. Through the subsequent hiring process, four of the five interviewees were determined qualified to be the Chief Filtration Engineer, and the position was ultimately offered to a current Filtration Engineer IV who was determined to be "the best qualified candidate for the position at the time." *Id.* ¶¶ 22–23.

Vassileva "indicated in her application materials that she had 11 years of supervisory experience, including supervision of up to 6 persons, in her experience as an FE II and FE III," even though both roles, on paper anyway, are nonsupervisory. *Id.* ¶ 25. According to Wise, while City employees may "act up" by performing the duties of a higher-graded position if that position is vacant or the incumbent is absent, under City policy, time spent "acting up" is not counted in determining whether an employee meets the minimum qualifications for a position. *Id.* ¶¶ 25, 27; [80-2] at 137–38[1] ¶ 14. Thus, even if Vassileva had performed supervisory duties while "acting up" as a Filtration Engineer II, per City policy she could not rely on that experience to meet the qualification for the Chief Filtration Engineer position. As a result, Wise

---

[1] The Court uses the blue ECF pagination at the upper-right corner of the document.

concluded that Vassileva's application materials had not demonstrated the minimum required supervisory experience. [80] ¶ 28.

Vassileva was not the only applicant over the age of 40, and "other applicants referred for interviews were close in age to [Vassileva], including the chosen applicant." *Id.* ¶ 30. Wise asserts in his declaration that he was the relevant decisionmaker and "did not consider any applicants' age, sex, or national origin." *Id.* ¶ 37.

Vassileva filed a charge of discrimination with the Illinois Department of Human Rights ("IDHR") on November 1, 2021, alleging discrimination based on her age, national origin, and sex, as well as retaliation based on previous charges she had filed with IDHR and the federal Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 41. After receiving a right-to-sue letter from the EEOC, Vassileva sued the City in federal court on January 10, 2024. *See* [1]. The City moved for judgment on the pleadings, [19], which was granted in the City's favor for all claims except Vassileva's failure-to-promote claim [23].

The City filed its motion for summary judgment on the failure-to-promote claim on April 10, 2025. [78]. Vassileva's response was initially due on June 10, 2025. [74]. On June 23, 2025—almost two weeks after that deadline—Vassileva moved for an extension to July 10, 2025, which the Court granted. [81], [83]. On July 10, the day of the new deadline, Vassileva moved for a second extension, this time to July 24, 2025. [84]. The Court granted this second motion. [86]. More than four months

later, Vassileva still has not filed a response, motion, or explanation for the delay in filing. The Court thus considers briefing to be long closed.

## III. Analysis

"To demonstrate a prima facie case for failure to promote, a plaintiff must produce evidence showing that: (1) she was a member of a protected class; (2) she was qualified for the position sought; (3) she was rejected for the position; and (4) the employer promoted someone outside of the protected class who was not better qualified for the position." *Riley v. Elkhart Cmty. Sch.*, 829 F.3d 886, 892 (7th Cir. 2016) (analyzing both ADEA and Title VII claims). The City does not dispute that Vassileva is a Bulgarian woman over 40 or that she was rejected for the Chief Filtration Engineer Position, so Vassileva meets the first and third prongs.

Vassileva's claim fails because she has produced no evidence whatsoever, let alone evidence that might show that she was qualified for the position or that the person who got the position was not better qualified. Vassileva has not denied the City's asserted facts, which are supported by record evidence, so the Court deems them admitted. *See Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218–19 (7th Cir. 2015) ("The non-moving party's failure to admit or deny facts as presented in the moving party's statement or to cite to any admissible evidence to support facts presented in response by the non-moving party render the facts presented by the moving party as undisputed."). In light of those admitted facts, there is no dispute that the Chief Filtration Engineer position required three years of supervisory experience, that Vassileva did not meet that requirement under the City's undisputed (and unchallenged) approach to assessing whether a candidate had the requisite

6

supervisory experience, and that the applicant who received the job did. [80] ¶¶ 14, 18, 24–25.

Vassileva thus has failed to make a prima facie case for her failure-to-promote claim, and the Court grants the City's motion for summary judgment on that basis. *See Riley*, 829 F.3d at 892 ("Summary judgment for the employer is appropriate if the employee fails to establish any of the elements of a prima facie case for failure to promote.").

It is not clear whether Vassileva seeks to maintain her claims under 42 U.S.C. §§ 1981 or 1983, or her Title VII retaliation claim. *See* [1] at 4; [23]. Regardless, nothing in the record creates a genuine dispute of material fact regarding those claims. Under § 1983, "[m]unicipalities may be sued only for their own violations of federal law … and cannot be held vicariously liable for the constitutional torts of their employees." Thomas v. Neenah Joint Sch. Dist., 74 F.4th 521, 523 (7th Cir. 2023); s*ee also Campbell v. Forest Pres. Dist. of Cook Cnty., Ill.*, 752 F.3d 665, 671 (7th Cir. 2014) (Section 1983 is "the exclusive remedy for violations of § 1981 committed by state actors."). Thus, for a § 1983 claim to succeed against the City, Vassileva must show that "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Thomas*, 74 F.4th at 523 (cleaned up). But nothing in the record suggests that there is any policy or custom of discrimination against people of Bulgarian origin, nor is there any indication that someone with

"final policymaking authority" was involved in any alleged unlawful action. *See* Waters v. City of Chicago, 580 F.3d 575, 581 (7th Cir. 2009) ("[B]oth the City Council and Commissioner of Human Resources may be considered final policymakers for the City in the area of employment.").

There is also no genuine dispute of material fact regarding Title VII retaliation. To succeed on a Title VII retaliation claim, Vassileva "must offer evidence from which a reasonable jury could find: (1) [she] engaged in an activity protected by the statute; (2) [she] suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action." *Lesiv v. Illinois Cent. R.R. Co.*, 39 F.4th 903, 911 (7th Cir. 2022). The City suggests that Vassileva filed a charge of discrimination in March 2019. [79] at 21. If Vassileva had provided admissible evidence of this earlier charge—and she has not—this would be a protected activity. But the more than two-year gap between that activity and the Chief Filtration Engineer hiring precludes an inference that there was a causal relationship between the two events. *See Lesiv*, 39 F.4th at 920 ("[T]wo-and-a-half-year gap … between the respective protected activities and materially adverse actions strongly suggest that the timing was not suspicious and cast serious doubts on whether a jury could find a retaliatory motive"). And because it is undisputed that Vassileva did not meet the qualifications for the Chief Filtration Engineer position, the City's decision to hire someone else is not an adverse action for the purpose of her retaliation claim. *See Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 275 (7th Cir. 2004) ("Dandy has not

proven that she was qualified for a promotion; therefore, her promotion denial does not constitute an adverse employment action.").

## IV.  Conclusion

For the foregoing reasons, the City's motion for summary judgment [78] is granted. Civil case terminated.


ENTER:

Georgia N. Alexakis
United States District Judge

Date: 1/5/2026

9